ROBERT L. BLAND, Judge.
In the late summer of 1943 an unprecedented flash-flood swept the Little Kanawha valley of central West Virginia with tempestuous fury. It was especially severe and disastrous at Burnsville, in Braxton county, and in the vicinity contiguous thereto. There was great damage to and destruction of property and many lives were lost. After the subsidence of the storm it was found that the homes and streets of Burnsville were so greatly damaged by muck, mud and debris, and conditions generally were so unsanitary that assistance was sought to aid in the work of rehabilitation. In some of the houses the water was more than six feet high. The conditions were appalling. A group of convicts from the state penitentiary at Moundsville at the time working at a prison *343 labor camp of the state road commission at Buckhannon in Upshur county, was sent to Burnsville to aid in the work of cleaning up the damage wrought by the flood.
Claimant, a retired Methodist minister, with his wife and household goods, arrived in Burnsville on the 6th of August, 1943, to take up his residence in Burnsville. He had come from a farm about five miles from Point Pleasant, Mason county. The household effects were brought from that point to Burnsville by a transfer company. On arrival in Burns-ville these household goods were temporarily placed in storage on the first floor of the Burnsville Grocery Company until such time as the residential property which he had secured could be made ready for occupancy. The flood had been in that building. Subsequently claimant’s household goods and other personal effects were removed to the house which he intended to occupy as a residence and placed in a room on the second floor of the building. He then cleaned out the house as well as he could; but his daughter who resides at Cowen, in Webster county, having told him it was not a sanitary place to live, he and his wife went to reside with her until everything was put in better condition in Burnsville. When they returned to Burnsville on the 22nd day of August, 1943, they found that the doors of their home had been opened and the house ransacked. Claimant then discovered that various household articles and other personal effects were missing, including about $27.00 in money, a watch, ten cans of salmon, a string of pearls, box of soap, and numerous other articles. Naturally suspicion rested upon the convicts although no one was able to establish their guilt.
The convicts were daily brought from Buckhannon to Burns-ville and returned to Buckhannon in the evening until a small trailer camp located in the outskirts of Burnsville was provided for them. On these trips to and from Buckhannon the convicts carried with them only their jackets and were under the close surveillance of the guards who accompanied them. It would seem unlikely that they could have carried articles *344 of bulk or heavy weight, such as boxes of soap and salmon, without discovery.
Claimant has, however, filed a claim against the state for the sum of $251.20 for the value of the property which he claims to have lost. This claim is contested by the state. Before going to Mason county to live claimant had resided at Cross Lanes, West Virginia. His household goods, including all the articles embraced in this claim, were packed and transported to Mason county from Cross Lanes. “The most of the stuff,” testified the claimant, “had not been unpacked from the time we moved away from Cross Lanes. . . .” The property was then removed by a transfer company to Burns-ville. At the latter place they were twice handled. They were first placed in a grocery establishment and finally removed to the place intended to be occupied as a residence. At the latter place the doors were not locked but insecurely barred. It is strange that claimant should have left money there knowing the condition of the house when he left it.
After claimant discovered the loss of his property he reported the fact to the prison camp. The convicts were then “shaken down” at the Buckhannon camp. There was found in the possession of one of them — a colored prisoner about thirty years of age — a watch, radio, electric iron, electric toaster and possibly several other small articles, none of which is embraced in the claim filed, and all of which were restored to claimant. None of the other articles mentioned and set forth in the claim were found either at the Buckhan-non camp or the Burnsville camp. Witnesses for the state testified that claimant did not identify with absolute certainty all of the property actually turned over to him. The convict from whose custody the articles were taken which were restored to claimant said he found a watch along the river where it had been washed out in some rubbish, and the other articles in a sack under a bush; that he supposed someone else had put them there to take away and that he “just picked up the sack and everything.” In this connection it may be *345 observed that claimant testified that a neighbor informed him that on the supposed date of the theft of his property she had seen a man coming out of his house “shaking a bag.” But it was not shown that he wore the garb or uniform of a convict. There is no positive evidence in the record to prove that convicts stole any of the missing articles embraced in the claim filed by claimant. The circumstantial evidence relied upon is insufficient to justify an award in his favor.
The convicts cleaned the streets, as well as the homes, when they were asked to do so. They were instructed not to enter any house unless requested to do so. It is not shown that any one of them entered claimant’s residence during his absence. They were in charge of a superintendent, one guard and three or four maintenance foremen during all of the time that they were at Burnsville. They worked in groups and were at all times under the closest observation and care. The evidence shows that there were thirty-two trusted convicts, known as honor men, selected for the clean-up work. There were four times as many guards supervising their work and watching over them as usually employed in the ordinary state road prison labor camp.
Claimant is a kindly, conscientious and upright gentleman and was very careful in the statements he made. We can sympathize with him in the loss he has sustained, but are unable under the evidence to recommend to the Legislature an appropriation for the payment of it.
An award will be denied and the claim dismissed.